# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT FLOWERS,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF PARMA, et al<br><br>          Defendant. | Case No. 1:14-CV-00453-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in the above-entitled matter is Defendants' Motion to Dismiss. The parties have filed responsive briefing and the Motion is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Robert Flowers, won the November 2013 mayoral election for the City of Parma, located in Canyon County, Idaho and was sworn into office in January of 2014. Prior to taking office, the Complaint alleges that certain members of the Parma City Council began

**MEMORANDUM DECISION AND ORDER- 1**

planning a recall of Mr. Flowers because of a conversation he had in December 2013 concerning the City's Chief of Police position.

After taking office, Mr. Flowers alleges these same Parma City Council Members submitted multiple versions of a Recall Petition to the City Clerk. The final Recall Petition submitted to the City Clerk accused Mr. Flowers of "...malfeasance of office, misuse of public funds and or equipment; violation of state and city laws, rules and regulations; and other documented actions causing great harm to the future and reputation of the City of Parma and its citizens...." (Dkt. 1 at ¶ 39.)[1] The allegations contained in the Recall Petition were published in the local news media. (Dkt. 1 at ¶¶ 41-43.) Mr. Flowers claims the allegations of criminal conduct were false and disparaging to his reputation. Ultimately Mr. Flowers resigned as Mayor on July 1, 2014 in response to the Recall Petition citing his failure in being able to work with the Parma City Council.

On October 24, 2014, Mr. Flowers initiated this law suit against the City of Parma, the four City Council Members who allegedly signed the recall petitions, and related participants. (Dkt. 1.)[2] The Complaint raises a claim under § 1983 alleging Due Process

---

[1] The Defendants claim, and Mr. Flowers does not dispute, that there was never a finalized recall petition submitted or filed with the City Clerk. (Dkt. 14 at 7) (Dkt. 15 at 6.) The Court has used the term "final" Recall Petition, consistent to the parties' use of the term, to refer to the last recall petition that was submitted to the City Clerk's office.

[2] The City Council members who are named as Defendants, both individually and as a City Council Member, are: Nathan Leigh, Oney Eguia, Angie Lee, and Tom Smith. (Dkt. 1.) The Complaint also names "Related Participants" who appear to be residents of Parma, Idaho who also signed the Recall Petition. (Dkt. 1 at ¶ 10.) The Complaint alleges the Defendants and Related Participants aided and abetted and/or conspired with one another in

(continued...)

**MEMORANDUM DECISION AND ORDER- 2**

violations and a claim for defamation *per se*. (Dkt. 1.) The Defendants filed an Answer and, later, this Motion to Dismiss. (Dkt. 9, 14.) The Court finds as follows.

## STANDARD OF LAW

The Defendants' Motion to Dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(6) which tests the sufficiency of a party's claim for relief. (Dkt. 14.) When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards.

Such a Motion, however, must be raised prior to the filing of any responsive pleading. In this case, the Defendants filed their Answer on November 18, 2014. (Dkt. 9.) The Motion to Dismiss was not filed until February 12, 2015. (Dkt. 14.) Thus, the Motion to Dismiss is untimely under the Federal Rule of Procedure 12(b)(6). ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). Defendants argue, however, that the Court should consider the Motion under Rule 12(c). (Dkt. 16.) Plaintiff contends that the Court should deny the Motion as untimely. (Dkt. 15.) The Court has considered the parties' arguments and the relevant circumstances in this case and finds it appropriate to construe the Motion as having been raised under Rule 12(c).

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is evaluated under the same standard applicable to

---

[2](...continued)
the wrongful conduct alleged therein. (Dkt. 1 at ¶ 12, 13.)

**MEMORANDUM DECISION AND ORDER- 3**

motions to dismiss brought under Rule 12(b)(6). *See Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997). Thus, the standard for a motion for judgment on the pleadings is that articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief.[3] When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations omitted). A judgment on the pleadings may be granted only when it appears beyond doubt that the claiming party can prove no set of facts in support of his claim which would entitle him to relief." *Enron Oil*, 132 F.3d at 529 (internal quotations and citations omitted).

---

[3] Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

MEMORANDUM DECISION AND ORDER- 4

When deciding a motion for judgment on the pleadings, the Court assumes the allegations in the complaint are true and construes them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). A judgment on the pleadings is appropriate when, taking all the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law. *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005); *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

## ANALYSIS

### 1.     Section 1983 Due Process Claim

Section 1983 provides a cause of action for violations of a plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009). In this case, Mr. Flowers' § 1983 claim alleges the Defendants violated his Due Process rights by making false public accusations of criminal activities he allegedly committed resulting in his constructive discharge or forced resignation without providing fair notice and opportunity to be heard and clear his name. (Dkt. 1 at ¶¶ 49-58.) A claim under 42 U.S.C. § 1983 predicated upon an act of defamation, requires

**MEMORANDUM DECISION AND ORDER- 5**

a plaintiff to allege what is often referred to as a "stigma-plus" claim: "a stigmatizing statement" plus a deprivation of a "tangible interest" without due process of law. *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002).

"'Stigma plus' is a theory rooted in the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693 (1976), and 'refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process.'" *Orr v. Wisner*, No. 3:08-CV-953 (JCH), 2010 WL 2667918, at *4 (D. Conn. June 29, 2010) (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)) (citation omitted). In order to state such a claim, the plaintiff must show the defendant made a stigmatizing statement or charge that is sufficient to give rise to a protectable liberty interest and that "1) the accuracy of the charge is contested; 2) there is some public disclosure of the charge; and 3) the charge is made in connection with termination of employment." *Brady v. Gebbie*, 859 F.2d 1543, 1552 (9th Cir. 1988) (citation omitted); *see also Campanelli v. Brockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "Where these elements exist, the plaintiff is 'entitled to notice and a hearing to clear his [or her] name.'" *Ulrich*, 308 F.3d at 982; *see also Reiber v. City of Pullman*, 918 F.Supp.2d 1091, 1102 (E.D. Wash. 2013) (citing cases).

Defendants argue Mr. Flowers has not stated a plausible § 1983 Due Process claim because there was no state action and he voluntarily resigned his position as Mayor; i.e., he was not discharged or terminated. (Dkt. 14, 16.) Mr. Flowers maintains he has a protected

**MEMORANDUM DECISION AND ORDER- 6**

liberty interest because he was forced to resign based on the false criminally stigmatizing statements made against him by Defendants in the Recall Petition. (Dkt. 15.)

### A.      Protectable Liberty Interest

"The Supreme Court has recognized that a liberty interest is implicated where 'a person's good name, reputation, honor or integrity is at stake.'" *Orloff v. Cleland*, 708 F.2d 372, 378 (9th Cir. 1983) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)).[4] Defamation by a state actor, however, does not amount to a deprivation of "liberty" within the meaning of the Fourteenth Amendment unless it is accompanied by some interest other than mere loss of reputation. *See Paul v. Davis*, 424 U.S. 693, 711 (1976). A liberty interest has been found where "the employer creates and disseminates a false and defamatory impression about the employee in connection with his [or her] termination." *Brady*, 859 F.2d at 1552 (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977) (citations omitted)). The "liberty interest" implicated under the Fourteenth Amendment on this claim "is the interest an individual has in being free to move about, live, and practice his [or her] profession without the burden of an unjustified label of infamy." *Stretten v. Wadsworth Vets. Hosp.*, 537 F.2d 361, 366 (9th Cir. 1976) (discussing *Roth*, 408 U.S. at 572). A plaintiff's liberty interest is not implicated unless "the government's stigmatizing statements effectively exclude the employee completely from her chosen profession." *Blantz v. Cal. Dep't of Corrections et al.*,

---

[4] The Fourteenth Amendment Due Process Clause protects an individual's property and liberty interests. *Roth*, 408 U.S. at 572. Mr. Flowers does not appear to assert a property interest under the Fourteenth Amendment. (Dkt. 1.) Therefore, the Court will analyze this claim only as it alleges a liberty interest under the Fourteenth Amendment.

**MEMORANDUM DECISION AND ORDER- 7**

727 F.3d 917, 925 (9th Cir. 2013). "Stigmatizing statements that merely cause reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession do not constitute a deprivation of liberty." *Id.*

      "Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty interest...." *Blantz*, 727 F.3d at 925 n. 6; *see also Bollow v. Federal Res. Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir. 1981). However, "dismissal for reasons of incompetence and inability to get along with co-workers d[oes] not infringe liberty interests." *Bollow*, 650 F.2d at 1101 (citations and quotations omitted). Whether an employer's statements stigmatize an employee is generally a question of fact. *Campanelli*, 100 F.3d at 1480.

      In this case, the allegedly offending statements were false accusations of criminal conduct against Mr. Flowers of "(1) malfeasance of office; (2) misuse of public funds, (3) violations of state and city laws, rules and regulations; and (4) other documented actions causing great harm to the future and reputation of the City of Parma and its citizens." (Dkt. 1 at ¶¶ 6.2, 7.2, 8.2, 9.2, and 10.1-10.25, 39.) The statements were made in the Recall Petition and published in the local news. (Dkt. 1 at ¶¶ 41-43.) For purposes of this Motion, the Court construes these allegations as true and finds that the statements themselves are sufficiently stigmatizing to implicate Mr. Flowers' liberty interest. *Campanelli,* 100 F.3d at

**MEMORANDUM DECISION AND ORDER- 8**

1480. The statements implicate Mr. Flowers in possible criminal activity, were publicly disclosed, and were allegedly false.[5]

### B.    State Actor Requirement

Defendants, however, contend the Complaint fails to allege facts showing any state action. (Dkt. 14 at 8-9.) Mr. Flowers maintains he has satisfied the state action requirement based on his allegations regarding the actions of the City Council Members, the City Attorney, and the City Clerk. (Dkt. 15 at 8-9, 11-13.)

Section 1983 provides a cause of action for violations of a plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre*, 580 F.3d at 1092. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citation omitted). To prevail on the § 1983 claim, Mr. Flowers must show that (1) acts by the Defendants, (2) under color of state law, (3) deprived it of federal rights, privileges or immunities, and (4) causing it damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163–64 (9th Cir. 2005) (quoting *Shoshone–Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)).

Defendants argue the City Council Members lacked the authority to recall or remove Mr. Flowers from his position as Mayor in their official capacity and, therefore, they were acting as private citizens when they took actions to recall Mr. Flowers. Further, Defendants

---

[5] The parties do not appear to dispute, at least for purposes of this Motion, that the statements were publicly disclosed and false. (Dkt. 14, 15, 16.)

argue the City of Parma itself did not act to deprive Mr. Flowers of any constitutional rights. Thus, there is no state action as required for a § 1983 claim. The Court agrees.

### i.      Whether Defendants Were State Actors

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Accordingly, acts of a state or local employee in his or her official capacity will generally be found to have occurred under color of state law. *Id.*

The Complaint in this case alleges certain of the City Council Members "began planning a recall of Mayor Flowers and used their official positions to do so." (Dkt. 1 at ¶ 25.) The four City Council Members who signed the Recall Petition, the Complaint goes on to state, constituted a quorum of the City Council and they met outside of formally announced Council meetings to plan, decide, and agree upon a scheme to recall Mr. Flowers by maliciously formulating and publishing false accusations of criminal conduct against him. (Dkt. 1 at ¶¶ 27-35.) The Complaint also alleges the City Council Members "mis-used their official positions to further the recall process" by revising the various versions of the Recall Petition. (Dkt. 1 at ¶¶ 37-38.) The Court finds these allegations do not give rise to a plausible claim of any state action by these Defendants in their official capacity.

Idaho Law does not afford the City Council Members or the City the authority to recall or remove the mayor. *See* Idaho Code §§ 34-1701(3)(a), 34-1702(4), 50-608, 50-701

**MEMORANDUM DECISION AND ORDER- 10**

*et seq*. The City Council Members who signed the Recall Petition were not doing so as state actors as they had no statutory obligation or authority to do so in their official capacity. *Id.* Therefore, the individual Defendants were not "state actors" based on the fact that they were members of the City Council when they signed the Recall Petition. (Dkt. 15 at 11) (Dkt. 1 at ¶¶ 46-47.) Further, the City itself was not a state actor in this case. The City Attorney's letter responding to Mr. Flowers' request for information and the actions of the City Clerk are insufficient to give rise to a plausible claim of a state action by the City because there is no showing of any policy, custom, or action taken by a person with final policymaking authority for the City. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978) (municipal liability only found where the constitutional deprivation is caused by an express policy; widespread practice, custom, or usage; or action by a final policymaker); (Dkt. 1 at ¶¶ 46-47.)

Because the actions alleged to have been taken by the Defendants in relation to the Recall Petition were not official acts by the City or the City Council, Mr. Flowers must show that the Defendants acted "under the color of state law" to deprive him of his constitutional rights in some way other than their official capacity; i.e. that they individually as private parties acted under the color of state law.

### ii.    Whether the Defendants Acted Under Color of State Law

The central issue in determining whether a person has acted "under color of state law" and, thus, is subject to suit under section 1983, is whether the alleged infringement of federal rights is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937

**MEMORANDUM DECISION AND ORDER- 11**

(1982). "State action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (en banc) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citation omitted). "Action taken by a private individual may be 'under color of state law' where there is 'significant' state involvement in the action." *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir. 1983). In the Ninth Circuit, four general approaches are used to determine whether private conduct is attributable to the state: 1) public function, 2) joint action/participation, 3) governmental compulsion or coercion, and 4) governmental nexus. *Henneberry v. City of Newark*, Case No. 13-cv-05238-MEJ, 2014 WL 4978576, at *10 (N.D. Cal. Oct. 6, 2014) (citation omitted); *see also Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Neither the public function nor state compulsion/coercion tests apply here.[6] Thus, the Court will discuss only the joint action and government nexus approaches.

---

[6] Under the public function test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans v. Newton*, 382 U.S. 296, 299 (1966). To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental. *Rendell–Baker v. Kohn*, 457 U.S. 830, 842 (1982). The recall process in Idaho is quite clearly a function of the public/electorate, not a function traditionally and exclusively governmental. Idaho Code § 34-1701 *et seq*. "Under the state compulsion approach, a private entity acts as the state when some state law or custom requires a certain course of action." *George v. Pacific–CSC Work Furlough*, 91 F.3d 1227, 1229, 32 (9th Cir. 1996). "'Action taken by private entities with the mere approval or acquiescence of the State is not state action [or coercion].'" *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806, 817 (9th Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)). Again, there is no state law or custom requiring any course of action taken by the individual Defendants in this case and, therefore, no coercion

(continued...)

**MEMORANDUM DECISION AND ORDER- 12**

Under the joint action or participation test, "a private party acts under color of state law if 'he [or she] is a willful participant in joint action with the State or its agents.'" *Lopez v. Dept. of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). That is to say, "a private party may be liable under § 1983 if he conspired or entered [into] joint action with a state actor." *Henneberry*, *supra* (citations and marks omitted).

"Under the governmental nexus test, a private party acts under color of state law if 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Lopez*, 939 F.2d at 883 (quoting *Jackson*, 419 U.S. at 351) (Constitutional deprivation caused by private party involves state action if claimed deprivation resulted from exercise of a right or privilege having its source in state authority.)). This test asks whether "there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Henneberry*, *supra* (quoting *Kirtley*, 326 F.3d at 1095) (quoting *Brentwood Acad.*, 531 U.S. at 295).

No joint action or governmental nexus has been shown in this case. Again, because the law does not provide authority for the City or the City Council to remove the duly elected Mayor, there is no state action shown in this case with whom the individual Defendants could have jointly acted or any nexus to the State. The allegations implicating

---

[6](...continued)
or compulsion.

**MEMORANDUM DECISION AND ORDER- 13**

state action are the fact that four of the Defendants were members of the City Council, the City Attorney responded to Mr. Flowers' letter, and the City Clerk was involved in the filing of the Recall Petition. These allegations do not show any joint action or close nexus between the state and the challenged action such that the private behavior may be fairly treated as action by the state. The City Council Members who signed the Recall Petition were acting outside of their statutory authority and duties in regards to their involvement in any scheme to recall Mr. Flowers. The City Attorney's letter is also not evidence of any state action despite the fact that it was purportedly written "on behalf of" the related parties and Recall Petition signers. Just the opposite, the letter indicates the City's refusal to cooperate or involve itself in the dispute concerning the recall; negating any state action by the City. (Dkt. 1 at ¶ 47.) The allegations regarding the City Clerk show her actions were appropriately the same as they would be in response to any individuals trying to file a recall petition. (Dkt. 1 at ¶¶ 37-39.) In fact, the City Clerk's refusal of at least three versions of the Recall Petition actually evidences the lack of any joint action or nexus between the City Clerk's actions and that of the Defendants.

The Complaint does include allegations of a conspiracy between the Defendants and Related Participants to deprive Mr. Flowers of his constitutional rights. (Dkt. 1 at ¶ 13.)[7] Such generalized allegations of a conspiracy, however, fail to provide sufficiently specific facts to state a plausible claim based on the existence of a conspiracy among the

---

[7] The Complaint also alleges aiding and abetting by the Defendants. (Dkt. 1 at ¶ 12.) The Court has considered this allegation as well as the conspiracy allegation in ruling on this issue.

**MEMORANDUM DECISION AND ORDER- 14**

defendants. *See Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992)

(claim of conspiracy under § 1983 must be supported by specific facts showing existence

of conspiracy). Further, as determined above, Mr. Flowers has not identified any "state

actor" or "state action" with whom the private individuals could have or did conspire

with. *Franklin*, 312 F.3d at 441, 445. The allegations in the Complaint are that the

individual Defendants participated in a "campaign" and/or "plan" to save the Chief of

Police and recall Mr. Flowers. (Dkt. 1 at ¶¶ 21, 25, 27.) Again, there was no authority for

the City Council or the City to remove Mr. Flowers. The actions taken by the individual

Defendants, therefore, were not joint actions or conduct fairly attributable to the state.

Because Mr. Flowers has failed to show a state action, the Court finds he has not

stated a plausible claim for relief under § 1983 and, therefore, the Motion to Dismiss as to

this claim is granted.

### C.    Termination

The Defendants next argue there was no termination in this case and, therefore, no

loss of any protected liberty interest and no plausible facts going to show that the

stigmatizing statements were made "in the course of" or in connection with his

termination. (Dkt. 14 at 6-7); *see Campanelli*, 100 F.3d at 1482-84 (citing *Codd*, 429 U.S.

at 627). Mr. Flowers counters that he was forced to resign in conjunction with the

stigmatizing statements and, therefore, had been terminated. (Dkt. 15 at 6-9.) Specifically,

Mr. Flowers argues he was not provided any details regarding the criminal accusations or

opportunity to rebut the charges and was left with the choice of either moving forward

**MEMORANDUM DECISION AND ORDER- 15**

with the recall election based on false criminal charges or resigning. (Dkt. 15 at 7.)

In support of his argument, Mr. Flowers quotes *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). (Dkt. 15 at 7.) In *Palka*, the Seventh Circuit recognized the possibility of a due process claim in certain circumstances where the plaintiff's resignation was involuntary; i.e., either constructive discharge or coerced resignation. *Id.* There, the court held that the plaintiff's allegations of forced resignation based on his having to chose between an unfavorable decision by a merit board or resigning to protect his retirement benefits were insufficient to state a procedural due process claim.

This Court similarly concludes that Mr. Flowers has failed to state a plausible § 1983 claim because he has not shown that he was terminated either by constructive discharge or otherwise forced to resign. In the face of a possible recall, Mr. Flowers chose to voluntarily resigned from his position as Mayor. Regardless of the fact that Mr. Flowers believed he could not work with the City Council because of the allegations made against him, it was Mr. Flowers' choice to resign as he was entitled to remain in office pending the outcome of any recall election. *See* Idaho Code § 50-608. Under Idaho law, Mr. Flowers could only be removed from the office of Mayor by voluntary resignation or recall election. Idaho Code §§ 34-1701, 50-608, and 50-701, *et. seq.* Furthermore, a recall election can only be instituted by registered electors, not by the City or the City Council. Idaho Code § 34-1702(3). Mr. Flowers was not terminated from his position as Mayor but, instead, voluntarily resigned. Further, Mr. Flowers has not alleged facts or circumstances that rise to the level of a constructive discharge or coerced

**MEMORANDUM DECISION AND ORDER- 16**

resignation, particularly since the Recall Petition was not finalized before he resigned. *See Palka*, 623 F.3d at 453.

Mr. Flowers also quotes *Velez v. Levy* and *Johnson v. Duffy* asserting the City Council Members are liable because they "set in motion the actions resulting in [Mr. Flowers'] forced resignation and deprivation of his constitutional right to notice."(Dkt. 15 at 6-9) (quoting *Velez v. Levy*, 401 F.3d 75, 89 (2nd Cir. 2005) and *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

In *Velez*, the Second Circuit concluded that publically stigmatizing statements made by other board members coupled with the chancellor's decision to remove plaintiff from the board, was sufficient to state a stigma-plus claim. *Velez*, 401 F.3d at 89. This case is distinct because, unlike in *Velez*, Mr. Flowers was not terminated.[8] Therefore, the Court need not resolve the question of whether there was sufficient parity between the stigma and the plus requirements.

In the other case quoted by Mr. Flowers, *Johnson v. Duffy*, the Ninth Circuit concluded that the defendant could be liable for failing to act when required to do so by statute resulting in the due process violation even though the defendant did not take any affirmative action that violated the plaintiff's rights. This case is also distinguishable. The

---

[8] One district court in this circuit has considered the holding in *Velez* and noted a split in the circuits over the question of whether the stigma and the plus must be committed by the same government actor in order to state such a claim. *See Eberhard v. California Highway Patrol*, No. 14-cv-01910-JD, 2014 WL 5794549, at *7 (N.D. Cal. Nov. 6, 2014). That district court concluded that the Ninth Circuit would require that the "stigma" and the "plus" be committed by the same state actor. *Id.*

**MEMORANDUM DECISION AND ORDER- 17**

Defendants here did not fail to perform a statutory duty requiring them to act which resulted in a violation of Mr. Flowers' due process rights. Just the opposite, the Defendants in this case had no authority to remove Mr. Flowers from his position as Mayor. Idaho Code §§ 34-1701, 50-608, and 50-701, *et. seq.* Any actions the Defendants took was outside of their statutory authority. Moreover, unlike in *Johnson*, it is the Defendants' affirmative acts that Mr. Flowers claims violated his due process rights, not any failure to act. (Dkt. 1.)

Because Mr. Flowers was not terminated, he cannot satisfy the "stigma-plus" standard established by *Paul v. Davis* requiring a plaintiff to demonstrate the infringement of a tangible interest beyond reputation alone, such as employment. *Harris v. Detroit Public Schools*, No. 06-1476, 2007 WL 2050645, at *6 (6th Cir. 2007) (quoting *Paul*, 424 U.S. at 701). That is to say, Mr. Flowers cannot establish that the stigmatizing statements were so closely related to any discharge from employment that the discharge itself may become stigmatizing in the public eye. *Ulrich*, 308 F.3d at 983 (quoting *Campanelli*, 100 F.3d at 1482).[9] Mr. Flowers has failed to state a plausible stigma-plus claim and the Motion to Dismiss will be granted on this claim.

_____

[9]A strict temporal link between the stigmatizing statements and the nonrenewal or discharge is not required for this element and post-termination statements may be sufficient. *Ulrich*, 308 F.3d at 983 (citing *Campanelli*, 100 F.3d at 1482). There just must "be some temporal nexus between the employer's statements and the termination." *Campanelli*, 100 F.3d at 1483.

**MEMORANDUM DECISION AND ORDER- 18**

2.     **Defamation** *Per Se* **Claim**

The second claim in the Complaint raises a defamation *per se* cause of action. (Dkt. 1 at ¶¶ 59-65.) Defendants contend the Complaint fails to plead facts sufficient to satisfy the pleading standards for this claim. (Dkt. 14 at 10-11.) Mr. Flowers maintains the Complaint properly alleges a cause of action for defamation *per se*. (Dkt. 15 at 14-15.)

"In a defamation action, a plaintiff must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." *Clark v. Spokesman-Review*, 163 P.3d 216, 219 (Idaho 2007) (citation omitted). "As a fourth element, when a publication concerns a public official, public figure, or matters of public concern and there is a media defendant, the plaintiff must also show the falsity of the statements at issue in order to prevail in a defamation suit. *Id.* (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775–76 (1986)). "Finally, if the plaintiff is a public figure, the *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), standard applies, and the plaintiff can recover only if he can prove actual malice, knowledge of falsity or reckless disregard of truth, by clear and convincing evidence." *Id.* (citations omitted).

"Under Idaho law, defamatory statements are actionable without allegation and proof of special damages if they impute to the plaintiff 1) a criminal offense; 2) a loathsome disease; 3) a matter incompatible with his trade, business, profession, or office; or 4) serious sexual misconduct." *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 750 (9th Cir. 2003) (citing *Yoakum v. Hartford Fire Ins. Co.*, 923 P.2d 416, 425 (Idaho 1996));

**MEMORANDUM DECISION AND ORDER- 19**

*see also Sadid v. Vailas*, 943 F.Supp.2d 1125, 1134-35 (D. Idaho 2013) ("Idaho follows

the common law rule allowing plaintiffs to receive an award of general damages without

proof of special damages in defamation per se cases.") (citing *Barlow v. Int'l Harvester,*

*Inc.*, 522 P.2d 1102, 1117 (Idaho 1974)). If the allegedly defamatory statement does not

fall within one of these categories, the plaintiff must allege and prove that some special

harm resulted from the utterance. *Sadid*, 943 F.Supp.2d at 1135. Where the statements are

plain and unambiguous, the Court may determine whether the statements are *per se*

defamatory a matter of law. *Id.* (citing *Weeks v. M P Publ'ns*, 516 P.2d 193, 195 (Idaho

1973)). If the statements are not plain and unambiguous, however, then this determination

is a factual question for the jury to decide. *Id.*

On this claim, the Complaint alleges:

The Recall Petition accuses Plaintiff of "malfeasance of office, misuse of
public funds and or equipment; violation of state and city laws, rules and
regulations; and other documented actions causing great harm to the future
and reputation of the City of Parma and its citizens."

(Dkt. 1 at ¶ 59.) The Complaint goes on to allege that statements were publicly made –

appearing in both the Recall Petition and newspapers – and are false as there is no factual

support for the allegations, particularly based on the short time Plaintiff was in office.

(Dkt. 1 at ¶¶ 60-61.) The Complaint also alleges the statements caused harm to Mr.

Flowers reputation resulting in damages. (Dkt. 1 at ¶ 65.) Finally, the Complaint alleges

the defamatory statements were "malicious, with the intent to injure Plaintiff and promote

their own interests, while having no justifiable motive for making the false accusations"

**MEMORANDUM DECISION AND ORDER- 20**

and were made "knowing the falsehood and/or with reckless disregard for the falsity of the statements." (Dkt. 1 at ¶¶ 63-64.)

The Court finds the Complaint recites the basic elements of a defamation *per se* claim alleging the statements in the Recall Petition are defamatory, in that they accuse Mr. Flowers of criminal acts, and they were made maliciously, publicly, and falsely. The claim centers on the statement made in the Recall Petition quoted above. (Dkt. 1 at ¶¶ 6.2, 7.2, 8.2, 9.2, 10, 14-48, and 59.) As to the malice requirement in particular, actual malice arises where a statement is made "with knowledge that the statement made was false or was made with reckless disregard of whether the statement was false or not." *Steele v. Spokesman-Review*, 61 P.3d 606, 609 (Idaho 2002) (citing *New York Times v. Sullivan*, *supra*). Mr. Flowers argues he requested documentation and details to support the criminal accusations made in the Recall Petition but was never provided anything. (Dkt. 1 at ¶ 46-47.) This failure by Defendants to supply any details specific to the criminal accusations made in the Recall Petition, Mr. Flowers asserts, shows they acted with actual malice by publishing false criminal accusations while doubting the truth and/or being aware of the falsity of the accusations. (Dkt. 15 at 15.) At this stage in the case, the Court finds the allegations by Mr. Flowers are minimally sufficient to state a plausible claim for defamation. That is to say, the Complaint contains just enough factual allegations to meet the minimum pleading standards.

However, the § 1983 claim that gave rise to original federal jurisdiction in this case has been dismissed. "Where a district court 'dismiss[es] every claim over which it

**MEMORANDUM DECISION AND ORDER- 21**

had original jurisdiction,' it retains "pure[ ] discretion[ ]" in deciding whether to exercise

supplemental jurisdiction over the remaining claims." *Lacey v. Maricopa Cnty.*, 693 F.3d

896, 940 (9th Cir. 2012) (quoting *Carlsbad Tech., Inc. V. HIF Bio, Inc.*, 556 U.S. 635,

639 (2009)); *see also* 28 U.S.C. § 1367(c). "In exercising its discretion to decline

supplemental jurisdiction, a district court must undertake a case-specific analysis to

determine whether declining supplemental jurisdiction 'comports with the underlying

objective of most sensibly accommodat[ing] the values of economy, convenience,

fairness and comity.'" *Bahrampour v. Lampert*, 356 F.3d 969, 978-79 (9th Cri. 2004)

(quoting *Executive Software N. Am., Inc. v. United States Dist. Ct.*, 24 F.3d 1545,

1557–58 (9th Cir. 1994)) (internal quotations and citations omitted).

    The Court has reviewed the entire record in this case and, having done so, will

decline to exercise supplemental jurisdiction over the sole remaining state law claim for

defamation. All of the other claims giving rise to this Court's original jurisdiction have

been dismissed. 28 U.S.C. § 1367(c)(3). While this Court recognizes that it may retain

supplemental jurisdiction, the general considerations underlying the exercise of

supplemental jurisdiction do not support doing so for the assault claim in this case. *See*

*Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("judicial economy,

convenience, fairness, and comity"—counseled dismissal of the state-law claims.).

    The defamation claim in this case generally relates to Plaintiff's allegations of

wrongful conduct by the Defendants towards Mr. Flowers while he was the elected

Mayor of the City of Parma. (Dkt. 1.) Resolution of this claim, while not particularly

**MEMORANDUM DECISION AND ORDER- 22**

complex, involves application of state law to facts concerning a local dispute. Additionally, this action is in the early stages of litigation. For these reasons, the Court finds the considerations of fairness and comity weigh against exercising supplemental jurisdiction over the sole remaining state law claim in this case. Therefore, the defamation claim is dismissed without prejudice.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motion to Dismiss (Dkt. 14) is **GRANTED** as follows:

1)  The First Claim – Due Process Violation – is **DISMISSED WITH PREJUDICE**.

2)  The Second Claim – Defamation *Per Se* – is **DISMISSED WITHOUT PREJUDICE**.

DATED:  **August 12, 2015**

~~Honora~~ble Edward J. Lodge
U. S. District Judge